O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

National Union Fire
Insurance Company of
Pittsburgh, PA and American
Guarantee & Liability
Insurance Company,

    Plaintiff/Intervening
Plaintiff,

    v.

Ready Pac Foods, Inc. and
Taco Bell Corp.,

    Defendant/Intervening
Defendant.
_____

Taco Bell Corp.,

    Third-Party Plaintiff,

    v.

St. Paul Fire and Marine
Insurance Company,

    Third-Party Defendant.
_____

) CV 09-3220 RSWL (MANx)
)
)
)
) **AMENDED ORDER GRANTING**
) **PLAINTIFF NATIONAL UNION**
) **FIRE INSURANCE COMPANY**
) **OF PITTSBURGH, PA [106],**
) **PLAINTIFF-IN-**
) **INTERVENTION AMERICAN**
) **GUARANTEE & LIABILITY**
) **INSURANCE COMPANY [114],**
) **AND THIRD-PARTY**
) **DEFENDANT ST. PAUL FIRE**
) **AND MARINE INSURANCE**
) **COMPANY'S [117] MOTIONS**
) **FOR PARTIAL SUMMARY**
) **JUDGMENT**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1

On December 14, 2010, Plaintiff National Union Fire Insurance Company ("National Union"), Plaintiff-in-Intervention American Guarantee & Liability Insurance Company ("American Guarantee"), and Third-Party Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") Motions for Partial Summary Judgment came on for regular calendar before this Court.  The Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court **GRANTS** Plaintiff National Union, Plaintiff-in-Intervention American Guarantee, and Third-Party Defendant St. Paul's Motions for Partial Summary Judgment.

## I.   BACKGROUND

The insurance coverage action before this Court centers on the extent of several commercial liability insurers' obligations to pay the sum of damages that Ready Pac, the Defendant in the Los Angeles Superior Court Action, may become legally obligated to pay. The underlying action currently pending in the Los Angeles Superior Court concerns the extent of Ready Pac's liability, if any, for damages caused as a result of an E. coli outbreak that took place at Taco Bell restaurants in the northeastern United States in late 2006.

In late November-early December 2006, a food-borne

1  illness outbreak (the "Outbreak") occurred in Taco Bell
2  restaurants in New York, New Jersey, Delaware, and
3  Pennsylvania that the Centers for Disease Control and
4  Prevention ("CDC") determined to be caused by a
5  particular strain of E. coli.  According to the CDC,
6  the Outbreak was most likely caused by E. coli
7  contaminated shredded lettuce consumed at Taco Bell
8  restaurants in the northeastern United States.

9      Taco Bell is the nation's leading Mexican-style
10 fast food restaurant chain.  Many of Taco Bell's
11 products incorporate pre-washed, pre-shredded iceberg
12 lettuce.  In November and December 2006, Taco Bell
13 purchased the pre-packaged, pre-washed, and
14 pre-shredded lettuce used in Taco Bell restaurants in
15 the northeastern United States exclusively from Ready
16 Pac.

17     On November 30, 2009, Taco Bell filed suit in Los
18 Angeles Superior Court against Ready Pac, as the likely
19 supplier of the contaminated product, alleging Breach
20 of Implied Warranty, Negligence, and Negligent
21 Interference with Prospective Economic Advantage
22 related to the Outbreak.  The plaintiffs in the Los
23 Angeles Superior Court Action include more than 500
24 Taco Bell franchisees claiming "property damage, bodily
25 injury, as well as damages suffered because of the
26 decline in patronage at all Taco Bell restaurants"
27 resulting from the Outbreak.

28     The declaratory relief action currently before this

Court centers on the extent of several commercial liability insurers' obligations to pay the sum of damages that Ready Pac may become legally obligated to pay.  Movants National Union, American Guarantee, and St. Paul seek partial summary judgment on the grounds that their respective insurance policies do not provide coverage for Taco Bell's economic loss arising out of an alleged decline in patronage at Taco Bell restaurants due to the E. coli outbreak ("Lost Patronage Claim").  On the other hand, Opponent Taco Bell contends that all three policies provide coverage for Ready Pac's liability, if any, for Taco Bell's Lost Patronage Claim.

During the period in which the Outbreak occurred, Ready Pac was insured by Plaintiff National Union with a commercial liability policy (the "National Union Policy").  The National Union Policy provides Ready Pac with coverage of $25 Million per occurrence and $25 Million in the aggregate.

Third-Party Defendant St. Paul issued to Ready Pac a second layer excess liability policy, providing Ready Pac with $25 Million in coverage (the "St. Paul Policy").  The St. Paul Policy is excess to the National Union Policy and "follows form" to the National Union Policy.  St. Paul is a Third-Party Defendant in this insurance action, brought into the litigation by Intervening Defendant/Third-Party Plaintiff Taco Bell.

In addition to the commercial excess liability policy issued by National Union, and the second layer commercial excess liability policy issued by St. Paul, Plaintiff-in-Intervention American Guarantee issued Ready Pac a third layer excess liability policy (the "American Guarantee Policy").  The American Guarantee Policy is an excess policy that provides Ready Pac with $25 Million in coverage.  The American Guarantee Policy also "follows form" to the National Union Policy.  Taco Bell contends that all three Policies provide coverage for Ready Pac's liability, if any, for Taco Bell's economic loss arising out of an alleged decline in patronage at Taco Bell restaurants due to the E. coli outbreak.

Opponent Taco Bell has identified five different types of loss/injury it allegedly suffered as a result of the E. coli outbreak[1].  The Movants' Motions for

---

[1] Taco Bell alleges five types of injury, damage or loss resulting from the E. coli outbreak: the lettuce provided by Ready Pac caused (a) bodily injury to customers at Taco Bell restaurants, (b) property damage to meals served at Taco Bell restaurants, including contamination of food and other items coming in contact with the contaminated lettuce as well as contamination of surfaces and equipment in the Taco Bell restaurants, (c) the destruction of other food and items based on concerns over their possible contamination, (d) losses suffered while Taco Bell restaurants were inoperable during the investigation, clean-up, and replacement of property damaged by the E. coli outbreak, and (e) losses suffered because of the decline in patronage at all Taco Bell restaurants as a consequence of the bodily injuries suffered by Taco Bell customers and

Partial Summary Judgment currently before this Court relate only to Taco Bell's fifth category of loss for the alleged decline in patronage at Taco Bell restaurants as a consequence of the bodily injuries suffered by Taco Bell customers and property damage to Taco Bell food products. In particular, the issue currently before this Court is limited to resolving the legal question of whether the insurance policies issued to Ready Pac by Movants National Union, American Guarantee, and St. Paul cover the damages asserted by Opponent Taco Bell for the decline in patronage at Taco Bell restaurants as a result of the E. coli outbreak.

## II. LEGAL STANDARDS

A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party can satisfy

property damage to Taco Bell food products. [Taco Bell's Answer and Counterclaim, 4:16-27.]

this burden by: (1) presenting evidence that negates an essential element of the non-moving party's case or (2) demonstrating that the non-moving party failed to establish an essential element of the non-moving party's case on which the non-moving party bears the burden of proving at trial. Id. at 322-23.

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. However, the non-moving party is required by Federal Rules of Civil Procedure, Rule 56(e)[2] to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993)(citing Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978)). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented." Anderson, 477 U.S. at 255.

---

[2] The Federal Rules of Civil Procedure were amended on December 01, 2010. Federal Rules of Civil Procedure, Rule 56(e) has now been codified as Federal Rules of Civil Procedure, Rule 56(c).

B. Partial Summary Judgment

Federal Rules of Civil Procedure, Rule 56(a) enables a party to move for partial summary judgment. Under Federal Rules of Civil Procedure, Rule 56(g), a court may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case.[3] Fed. R. Civ. P. 56(g).  A partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order, neither of which is appealable prior to the entry of a final judgment in the case in the absence of a specific statute authorizing an appeal. Wynn v. Reconstruction Fin. Corp., 212 F.2d 953, 956 (9th Cir. 1954); Fed. R. Civ. P. 56(g).  Rule 56(g) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial. Fed. R. Civ. P. 56(g). See State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987).

---

[3] The Federal Rules of Civil Procedure were amended on December 01, 2010, subsequent to the Movants filing their Motions for Partial Summary Judgment.  As such, the Movants relied on Federal Rules of Civil Procedure, Rule 56(d) in their papers, which has now been codified as Federal Rules of Civil Procedure, Rule 56(g).

1    <u>C. The Declaratory Judgment Act</u>

2        The Declaratory Judgment Act requires an actual

3    controversy to exist between the parties before a court

4    decides whether or not to consider the matter. 28

5    U.S.C. § 2201.  To satisfy the "actual controversy"

6    requirement of the Declaratory Judgment Act, courts

7    look at whether the facts alleged, under all of the

8    circumstances, show that there is a substantial

9    controversy, between parties having adverse legal

10   interests, of sufficient immediacy and reality to

11   warrant the issuance of a declaratory judgment.

12   <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127

13   (2007)(citing <u>Maryland Cas. Co. v. Pacific Coal & Oil</u>

14   <u>Co.</u>, 312 U.S. 270, 273 (1941)).

15

16                    **III. DISCUSSION**

17   <u>A. The Movants' Request For Partial Summary</u>

18   <u>Judgment Is Procedurally Proper</u>

19       As an initial matter, the Court finds that the

20   Movants' request for Partial Summary Judgment with

21   regard to the Lost Patronage Claim only is

22   procedurally proper under the recently amended Federal

23   Rules of Civil Procedure, Rule 56.  The Court finds

24   that the Movants' request for Partial Summary Judgment

25   with regard to the Lost Patronage Claim only is a

26   request for adjudication on part of its entire claim

27   for declaratory relief and therefore procedurally

28   proper under Federal Rules of Civil Procedure, Rule

                              9

56(a).

Federal Rules of Civil Procedure, Rule 56(a) states that a party may move for summary judgment on the part of each claim or defense. Fed. R. Civ. P. 56(a).  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Id.  Under Rule 56(d), now codified as Federal Rules of Civil Procedure, Rule 56(g), if the Court does not grant all the relief requested by the motion, it may enter an order stating any material fact, including an item of damages or other relief, that is not genuinely in dispute and treating the fact as established in the case. Fed. R. Civ. P. 56(g).  Under Federal Rules of Civil Procedure, Rule 56(g), partial summary judgment or summary adjudication is appropriate as to specific issues if it will narrow the issues for trial. See Watson Laboratories, Inc., v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1123 (C.D. Cal. 2001).

The Court also finds that the Movants' request for Partial Summary Judgment is ripe for review and that a controversy exists in this case so as to allow the Court to exercise jurisdiction under the Declaratory Judgment Act, despite the pending Los Angeles Superior Court Action.  The Ninth Circuit has held that there is a "case or controversy" when an insurer brings a declaratory judgment action to establish whether it has

a duty to defend and to indemnify, even when the
underlying liability action has not yet proceeded to
judgment. See American States Ins. Co. v. Kearns, 15
F.3d 142, 144 (9th Cir. 1994).

Under California law, an insurer may seek
declaratory relief on coverage issues while the
underlying action is pending as long as the coverage
question does not turn on facts to be litigated in the
underlying action. Montrose Chemical Corp. v. Super.
Ct., 6 Cal. 4th 287, 302 (1993).  Here, the Court is
not being asked to determine if Ready Pac is, in fact,
liable for the Lost Patronage Claim, and the Court need
not have made any such determination in ruling on these
Motions for Partial Summary Judgment.  Rather, the
Court is being asked to determine whether Ready Pac's
potential liability under the Lost Patronage Claim
would be covered through the underlying National Union
Policy.

Accordingly, the Court finds that these Motions
present a legal question of policy interpretation for
the Court based on undisputed facts.  The
interpretation of an insurance policy is a question of
law for the Court. Blue Ridge Ins. Co v. Stanewich, 142
F.3d 1145, 1147 (9th Cir. 1998).  Partial summary
judgment is appropriate where, as here, there are no
material issues of fact and the controlling question
before the Court is one of law. Homestead Ins. Co. v.
Ryness Co., 851 F. Supp. 1441, 1443 (N.D. Cal. 1992).

1    B. California Law Governs The Interpretation Of All
2       Three Insurance Policies
3        With regard to the choice of law, California law
4    governs the interpretation of all three insurance
5    policies at issue here.  In a diversity action, the
6    forum state's law governs the interpretation of the
7    insurance policy.  Bell Lavalin, Inc. v. Simcoe and
8    Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995).
9    Moreover, the general principles governing the
10   interpretation of an insurance policy are well
11   established.  The California Supreme Court has
12   previously held that the policyholder bears the burden
13   of proving coverage under the insuring agreement of the
14   policy. Aydin v. First State Ins. Co., 18 Cal. 4th
15   1183, 1188 (1998).  In fact, generally the burden is on
16   an insured to establish that the occurrence forming the
17   basis of its claim is within the basic scope of
18   insurance coverage. Weil v. Fed. Kemper Life Assurance
19   Co., 7 Cal. 4th 125, 148 (1994). And, once an insured
20   has made this showing, the burden is on the insurer to
21   prove the claim is specifically excluded. See Garvey v.
22   State Farm Fire & Cas. Co., 48 Cal. 3d 395, 406 (1989).
23       While Intervening Defendant Taco Bell is not the
24   insured under the National Union, American Guarantee,
25   and St. Paul Policies, Taco Bell has intervened and
26   seeks an adjudication that Defendant Ready Pac is
27   entitled to coverage under all three Policies for Taco
28   Bell's Lost Patronage Claim.  Therefore, it is Taco

1  Bell that bears the burden in this case of proving
2  coverage.

3       Under California law, to resolve a question of
4  insurance policy interpretation, the court performs an
5  independent review, looking first to the language of
6  the policy. Waller v. Truck Ins. Exch., Inc., 11 Cal.
7  4th 1, 18 (1995).  National Union issued commercial
8  liability policy number BE 5191146 to Ready Pac for the
9  period of April 01, 2006 to April 01, 2007 ("National
10 Union Policy").  St. Paul issued an excess liability
11 policy number QI02100125 to Ready Pac for the period of
12 April 01, 2006 to April 01, 2007.  The St. Paul Policy
13 is an excess policy, which follows form to the
14 underlying National Union Policy.  Additionally,
15 American Guarantee issued an excess liability policy
16 number AEC 5086682 02 to Ready Pac for the period of
17 April 01, 2006 to April 01, 2007.  The American
18 Guarantee Policy also follows the form of the National
19 Union Policy.

20      "[E]xcess insurance provides coverage only upon the
21 exhaustion of specified primary insurance." Legacy
22 Vulcan Corp. v. Super. Ct., 185 Cal. App. 4th 677, 695
23 (2010).  A policy that incorporates the terms and
24 conditions of another carrier's policy and provides the
25 same scope of coverage as the underlying policy is a
26 "follow form" policy that covers only those damages
27 covered by the underlying policy. Wells Fargo Bank v.
28 Cal. Ins. Guar. Assn., 38 Cal. App. 4th 936, 940

1   (1995).  Coverage for follow form policies is
2   determined by evaluating whether the alleged damages
3   are covered by the underlying policy. See id.

4        The controlling underlying insurance clause in the
5   National Union Policy states that the insurer will pay
6   on behalf of the insured "those sums in excess of the
7   Retained Limit that the Insured becomes legally
8   obligated to pay as damages by reason of liability
9   imposed by law because of Bodily Injury, Property
10  Damage or Personal Injury and Advertising Injury..."
11  [Declaration of Frank Hager, ¶ 3, Ex. 1, at 0007.]

12       Moreover, the underlying National Union Policy
13  defines bodily injury as "bodily injury, sickness or
14  disease sustained by any person..." [Id. at 0037.]
15  Property damage, under the Policy, is defined as
16  "physical injury to tangible property, including all
17  resulting loss of use of that property.  All such loss
18  of use will be deemed to occur at the time of the
19  physical injury that caused it; or loss of use of
20  tangible property that is not physically injured.  All
21  such loss of use will be deemed to occur at the time of
22  the Occurrence that caused it." [Id. at 0027-28.]

23

24       C. The Lost Patronage Claim Is Not A Claim For
25          Damages Because Of Bodily Injury, Property Damage,
26          Or Personal Injury And Advertising Injury
27            **I. Property Damage and Bodily Injury**
28       The issue before the Court is whether Taco Bell's

14

claim for lost profits was "because of" covered property damage and bodily injury.

Opponent Taco Bell contends that but for the E. coli outbreak that caused bodily injury and property damage, it would not have suffered lost revenue and profits from a decline in patronage.   Therefore, Taco Bell avers that the damages it seeks under the Lost Patronage Claim are "because of" the bodily injury and property damage caused by the E. coli outbreak.   On the other hand, the Movants, that is the three insurance companies named in this action, assert that Taco Bell's Lost Patronage Claim is an economic loss claim that is not covered under the National Union Policy and rely on the California Supreme Court decision in Geddes & Smith, Inc. v. St. Paul-Mercury Indemnity Co., 51 Cal. 2d 558 (1959)("Geddes I") to further this argument.

In Geddes I, the California Supreme Court interpreted a similarly worded commercial general liability policy, which required the insurer to indemnify the insured for losses incurred "because of injury to or destruction of property." Id. at 562.   In that case, the insured supplied aluminum doors and was sued by a contractor who installed the doors on a number of houses, only to have the doors fail. Id. at 560-561.   The contractor asserted various claims for expenses incurred in removing, installing, repairing, storing and shipping the doors, including office overhead and lost profit. Id.   While the California

1  Supreme Court allowed recovery for physical damage to
2  the houses which resulted from the defective doors, it
3  did not allow recovery for lost profits. Id. at 565.
4      The Geddes I court expressly rejected the insured's
5  claim for lost profits and goodwill despite the
6  existence of actual covered damage to tangible
7  property. Id. at 566.  The Geddes I court's decision
8  supports the Movants' contention in this case that lost
9  profits and goodwill are not damages because of damage
10  to physical property.  Moreover, the Court finds the
11  Movants' reliance on two subsequent cases highlighting
12  the principle outlined by Geddes I equally persuasive.
13      Geddes & Smith, Inc. v. St. Paul-Mercury Indemnity
14  Co., 63 Cal. 2d 602 (1965)("Geddes II") clarified that
15  expenses incurred in ameliorating the damage to
16  tangible property are covered because they are the
17  measure of damage to tangible property.  The Geddes II
18  court held that loss from damage to intangibles is
19  recoverable only to the extent that it provides a
20  measure of damages to physical property which is within
21  the policy's coverage. Id. at 609.  The Geddes II court
22  found that overhead was recoverable under the policy
23  because it provided a measure of the damages to the
24  houses or the covered tangible property in that case.
25  Id.  "Overhead is distinguished from lost profits and
26  goodwill in that it represents not a potential asset of
27  the business but an essential expense incurred in the
28  performance of the work." Id.

Applying this reasoning to the facts of this case, Taco Bell's claim for lost profits does not amount to "an essential expense incurred in the performance of the work" to remedy either the damage done to tangible property at Taco Bell restaurants or the personal injuries suffered by Taco Bell's customers. Id. at 609. Taco Bell's claim for lost profits is not a measure of the damage to meals served at Taco Bell restaurants nor the cost of the destroyed contaminated food items. Taco Bell's alleged lost profits as a result of customers deciding not to eat at Taco Bell restaurants nationwide is not a measure of the value of the meals and food that were destroyed at Taco Bell restaurants directly affected by the Outbreak. Furthermore, Taco Bell's claim for lost profits from the decline in patronage is also not a measure of the costs incurred to clean up the Taco Bell restaurants affected by the Outbreak. The Court finds the Movants' reliance on an additional California Supreme Court decision in substantiating their position that economic loss claims are not covered where such losses are not a measure of damage to physical property equally instructive.

In Hogan v. Midland National Insurance Co., 3 Cal. 3d 553 (1970)("Hogan"), the insured was sued for damages allegedly arising out of a defective saw it manufactured. The customers obtained a judgment for damages for lumber the saw cut too narrow, damages for lumber that was deliberately cut wider than necessary

in order to prevent rejection from undercutting, damages for the cost of paying wages and other expenses for periods when the saw failed to operate and damages for the cost of leasing and cancelling a lease on a machine to be used in conjunction with the saw. <u>Id.</u> at 560.  Relying on <u>Geddes I</u> and <u>Geddes II</u>, the <u>Hogan</u> court concluded that there was no coverage for damages awarded for the cost of leasing and cancelling the lease on the machine that was to be used with the saw, holding that loss from damage to intangibles is recoverable only to the extent that it provides a measure of damages to physical property. <u>Id.</u> at 563.

The Court finds the reasoning in the <u>Geddes</u> line of cases persuasive.  Specifically, the Court finds that Taco Bell's claim for lost profits at the Taco Bell restaurants that were never shut-down during the E. coli investigation as a claim for purely economic loss, and not a measure of property damage or personal injury suffered by Taco Bell and its customers.

Intervening Defendant Taco Bell argues that the modern trend of cases are not in accord with the <u>Geddes</u> line of cases and therefore the <u>Geddes</u> line of cases are no longer controlling California authority.  More specifically, Taco Bell relies on two cases, <u>AIU Insurance Co. v. Superior Court</u>, 51 Cal. 3d 807 (1990)("AIU Insurance"), and <u>Globe Indemnity Co. v. California</u>, 43 Cal. App. 3d 745 (1974)("Globe") in substantiating this argument. However, the Court finds

that Taco Bell's reliance on these authorities is misguided.

In fact, both of these cases are in line with the standard that intangible losses are recoverable if they provide "the measure of damages to physical property which is within the policy's coverage" as outlined by the court in Hogan. Hogan, 3 Cal. 3d at 562.  In AIU Insurance, the damages sought by the government were expenses for cleanup and response costs incurred under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). AIU Ins., 51 Cal. 3d at 813-14.  Those damages equated to the "measure" of the harm recoverable for the damage to tangible property. In Globe, the California Court of Appeal permitted an insured to recover for the amount he was required to pay the city for negligently causing a fire. Globe, 43 Cal. App. 3d at 752.  The Globe court allowed recovery because the amount paid was the measure of "expenses incurred in mitigation of damages to tangible property."[4] Id.

Here, Taco Bell's Lost Patronage Claim against the

_____

[4] Given the strength of controlling California case law regarding the denial of recovery for lost profits under a commercial general liability policy, the Court finds Opponent Taco Bell's reliance on decisions from other circuits such as Wausau Underwriters Insurance v. United Plastics Group, 512 F.3d 953 (7th Cir. 2008) and Aetna Casualty & Surety Co. v. General Time Corp., 704 F.2d 80 (2d Cir. 1983) unpersuasive.

Movants in this case is not for economic expenditures incurred by Taco Bell in mitigating damages as a result of the Outbreak.  Moreover, while the existence of covered property damage and bodily injury is not disputed in this declaratory relief action, the mere existence of covered property damage does not permit recovery for Taco Bell's lost profits.  In fact, courts have repeatedly declined to extend commercial general liability coverage to purely economic injuries, even when covered property damage or bodily injury claims have been successfully asserted. See Geddes, 51 Cal. 2d at 566; Hogan, 3 Cal. 3d at 562.

Additionally, the California Supreme Court's more recent cases regarding the extent of coverage under a commercial general liability policy make clear that the Geddes line of cases remain good law. See Montrose, 6 Cal. 4th at 302.  In Montrose, the California Supreme Court distinguished AIU Insurance from the Geddes line of cases in ruling that "a suit seeking recovery for injuries to intangible economic interests is not a suit 'of the nature and kind' covered by a CGL policy, whereas environmental contamination alleged under CERCLA is 'property damage' within the meaning of such a policy." Id.

Moreover, the California Supreme Court has consistently held that suits for lost profits and loss of goodwill equate to intangible loss and therefore not generally covered under a commercial general liability

policy.  See Waller, 11 Cal. 4th at 26-27.  See also Kazi
v. State Farm Fire & Cas. Co., 24 Cal. 4th 871, 879
(2001).   The Court finds that under California Supreme
Court case precedent, Taco Bell's lost profits and loss
of goodwill claim due to the decline in patronage at
Taco Bell restaurants does not fall within the
definition of "property damage" nor are such losses
"because of property damage."  The lost revenue that
Taco Bell seeks to recover through its Lost Patronage
Claim is similar to the loss of profits and the loss of
goodwill damages that were at issue in Geddes I.   The
Court finds that such losses are intangible and do not
equate to property damage as outlined in the underlying
National Union Policy.

    Furthermore, California law makes clear that the
occurrence itself must directly cause the bodily
injury, the injury to tangible property, or the loss of
use of the property for coverage to apply. American
Internat. Bank v. Fidelity & Deposit Co., 49 Cal. App.
4th 1558, 1569 (1996).  As such, damages for loss of
goodwill and loss of anticipated profits are not
covered under a liability policy even where such loss
of goodwill and loss of profits are alleged to have
resulted from covered "property damage." Geddes, 51
Cal. 2d 558; Liberty Mutual Ins. Co. v. The
Consolidated Milk Producers' Ass'n, 354 F. Supp. 879
(D.C.N.H. 1973).

    With regard to the argument for coverage because of

the loss of use of tangible property, Taco Bell
concedes that the Lost Patronage Claim is not a claim
for damages because of loss of use of property that has
not been physically injured.  Given Taco Bell's
position, the Court need not determine whether Taco
Bell suffered a loss of use of Taco Bell restaurants
because of the decline in patronage at the Taco Bell
restaurants after the E. coli outbreak.

Additionally, the Court finds that Taco Bell's
argument that the Policies afford coverage for the
alleged decline in patronage as damages flowing from
the covered "bodily injury" claims is without merit.
Taco Bell's interpretation and argument that "because
of bodily injury" substantiates coverage for its Lost
Patronage Claim expands the coverage of the policy so
as to provide coverage for almost any liability where
bodily injury is a factor.  Courts from other
jurisdictions have previously determined that there is
no coverage for economic losses "because of bodily
injury" under the "bodily injury" portion of a
liability policy. See Diamond State Ins. Co. v.
Chester-Jensen Co., Inc., 611 N.E.2d 1083, 1088 (Ill.
App. Ct. 1993). See also Atlantic Mut. Ins. Co. v.
Roffe, Inc., 73 Wash. App. 858, 862 (Wash. Ct. App.
1994).  Accordingly, the Court finds these cases
particularly instructive in supporting its ruling that
Taco Bell's Lost Patronage Claim is not a claim for
damages because of bodily injury.

### ii. Personal Injury And Advertising Injury

Taco Bell does not assert that its Lost Patronage Claim constitutes damages because of "personal injury and advertising injury." As such, the Court need not decide whether Taco Bell is entitled to coverage for lost profits because of personal injury and advertising injury as defined under the controlling National Union Policy.

In sum, the Court finds that Taco Bell has not met its burden of proving coverage under the underlying National Union Policy for its Lost Patronage Claim. See Aydin, 18 Cal. 4th at 1188. See also Weil, 7 Cal. 4th at 148. California Supreme Court case precedent declining coverage for economic injuries supports this Court's finding that Taco Bell's lost profits and loss of goodwill claim due to the decline in patronage at Taco Bell restaurants are not losses "because of property damage and bodily injury" and therefore not subject to coverage under the primary National Union Policy.

As the Court finds that Taco Bell has not met its initial burden of proving coverage for the Lost Patronage Claim under the primary National Union Policy, the Court need not review the merits of the parties arguments under the exclusion claim. Once an insured has met its burden of proving coverage, the burden is then on the insurer to prove the claim is specifically excluded. See Garvey v. State Farm Fire &

Cas. Co., 48 Cal. 3d 395, 406 (1989). <u>See also Clemmer</u>
<u>v. Hartford Ins. Co.</u>, 22 Cal. 3d 865 (1978).

## IV. CONCLUSION

For the reasons stated above, the Court finds that
there is no triable issue of material fact regarding
Taco Bell's Lost Patronage Claim and **GRANTS** Plaintiff
National Union, Plaintiff-in-Intervention American
Guarantee, and Third-Party Defendant St. Paul's Motions
for Partial Summary Judgment.  The Court finds as a
matter of law that Taco Bell's Lost Patronage Claim
amounts to a claim for economic loss and is therefore
not covered under the commercial liability policies
issued to Defendant Ready Pac by National Union,
American Guarantee, and St. Paul.

The Court finds that National Union Policy number
BE 5191146 does not cover Ready Pac's liability, if
any, for the losses identified in paragraph 16(e) of
Intervenor Taco Bell's counterclaim in this action and
the losses identified in paragraphs 575(1), 588(1), and
596(1) of Taco Bell's complaint in the action entitled
Taco Bell Corp., et al. v. Ready Pac Produce, Inc., et
al., Los Angeles County Superior Court Case No. BC
427015 ("Los Angeles Superior Court Action") - the loss
in revenue and associated profit because of the decline
in patronage at Taco Bell restaurants as a consequence
of the E. coli outbreak alleged in Taco Bell's
counterclaim.

1    Additionally, the Court finds that American

2 Guarantee and Liability Insurance Company Policy number

3 AEC 5086682 02, does not afford coverage for liability,

4 if any, imposed in the Los Angeles Superior Court

5 Action for damages allegedly suffered by Taco Bell, its

6 affiliates, and certain of its franchisees "because of

7 the decline in patronage" at Taco Bell restaurants

8 which, during the investigation of a 2006 E. coli

9 outbreak and thereafter, were fully operational and

10 open for business.

11    Moreover, the Court finds that Third-Party

12 Defendant St. Paul has no duty to indemnify Ready Pac

13 under Policy number QI02100125, with respect to any

14 losses incurred due to the decline in patronage at Taco

15 Bell restaurants resulting from the E. coli outbreak at

16 Taco Bell restaurants in November and December 2006.

17 Moreover, the Court finds that St. Paul has no

18 obligation to reimburse Taco Bell or contribute toward

19 any settlement or judgment under the St. Paul Policy or

20 in the Los Angeles Superior Court Action for any losses

21 incurred due to the decline in patronage at Taco Bell

22 restaurants resulting from the E. coli outbreak.

23    The Court finds that St. Paul has no obligation to

24 contribute toward any settlement or judgment in the

25 Taco Bell Corp. et al. v. Ready Pac Foods, Inc. et al.,

26 Los Angeles Superior Court, Case No. BC427015 ("Los

27 Angeles Superior Court Action") for any losses incurred

28 due to the decline in patronage at Taco Bell

restaurants resulting from the E. coli outbreak.
Additionally, the Court finds that St. Paul has no duty
to indemnify Ready Pac, reimburse Taco Bell, or
contribute toward any settlement or judgment in the Los
Angeles Superior Court Action for any losses incurred
due to the decline in patronage at Taco Bell
restaurants which were not closed down due to the E.
coli outbreak.

Furthermore, the Court finds that St. Paul has no
duty to indemnify Ready Pac, reimburse Taco Bell, or
contribute toward any settlement or judgment in the Los
Angeles Superior Court Action for any losses incurred
due to the decline in patronage at Taco Bell
restaurants located outside the states of New Jersey,
New York, Pennsylvania, and Delaware resulting from the
E. coli outbreak.  The Court finds that St. Paul has no
duty to indemnify Ready Pac, reimburse Taco Bell, or
contribute toward any settlement or judgment in the Los
Angeles Superior Court Action for any losses incurred
due to the decline in patronage at Taco Bell
restaurants that were not physically exposed to any
contaminated lettuce during the E. coli outbreak.

Lastly, the Court finds that St. Paul has no duty
to indemnify Ready Pac, reimburse Taco Bell, or
contribute toward any settlement or judgment in the Los
Angeles Superior Court Action for any losses incurred
due to the decline in patronage at Taco Bell
restaurants whose operations were not restricted by

health and government officials during the
investigation of the E. coli outbreak.

DATED: March 18, 2011

**IT IS SO ORDERED.**


RONALD S.W. LEW

_____

**HONORABLE RONALD S.W. LEW**

Senior, U.S. District Court Judge